UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


<u>Virginia Blamire</u>

    v.                                               Civil No. 14-cv-212-LM
<u>Carolyn W. Colvin, Acting</u>              Opinion No. 2015 DNH 105
<u>Commissioner, Social</u>
<u>Security Administration</u>


**O R D E R**

Pursuant to 42 U.S.C. § 405(g), Virginia Blamire moves to reverse the Acting Commissioner's decision to deny her application for Social Security disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. § 423. The Acting Commissioner, in turn, moves for an order affirming her decision. For the reasons that follow, the decision of the Acting Commissioner, as announced by the Administrative Law Judge ("ALJ"), is affirmed.

**Standard of Review**

The applicable standard of review in this case provides, in pertinent part:

> The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing. The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . .

42 U.S.C. § 405(g). However, the court "must uphold a denial of social security disability benefits unless 'the [Acting Commissioner] has committed a legal or factual error in evaluating a particular claim.'" Manso-Pizarro v. Sec'y of HHS, 76 F.3d 15, 16 (1st Cir. 1996) (quoting Sullivan v. Hudson, 490 U.S. 877, 885 (1989)).

As for the statutory requirement that the Acting Commissioner's findings of fact be supported by substantial evidence, "[t]he substantial evidence test applies not only to findings of basic evidentiary facts, but also to inferences and conclusions drawn from such facts." Alexandrou v. Sullivan, 764 F. Supp. 916, 917-18 (S.D.N.Y. 1991) (citing Levine v. Gardner, 360 F.2d 727, 730 (2d Cir. 1966)). In turn, "[s]ubstantial evidence is 'more than [a] mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Currier v. Sec'y of HEW, 612 F.2d 594, 597 (1st Cir. 1980) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). But, "[i]t is the responsibility of the [Acting Commissioner] to determine issues of credibility and to draw inferences from the record evidence. Indeed, the resolution of conflicts in the evidence is for the [Acting Commissioner], not the courts." Irlanda Ortiz v. Sec'y of HHS,

2

955 F.2d 765, 769 (1st Cir. 1991) (citations omitted). Moreover, the court "must uphold the [Acting Commissioner's] conclusion, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." Tsarelka v. Sec'y of HHS, 842 F.2d 529, 535 (1st Cir. 1988). Finally, when determining whether a decision of the Commissioner is supported by substantial evidence, the court must "review[] the evidence in the record as a whole." Irlanda Ortiz, 955 F.2d at 769 (quoting Rodriguez v. Sec'y of HHS, 647 F.2d 218, 222 (1st Cir. 1981)).

**Background**

The parties have submitted a Joint Statement of Material Facts (document no. 12). That statement is part of the court's record and will be summarized here, rather than repeated in full.

Blamire has been diagnosed with psoriatic arthritis, which is "the occurrence of psoriasis and polyarthritis, resembling rheumatoid [arthritis] . . . and often involving the digits." Stedman's Medical Dictionary 160 (28th ed. 2006). Rheumatoid arthritis, in turn, is "a generalized disease . . . which primarily affects connective tissue . . . involving many joints, especially those in the hands and feet   . [and which is] often

3

chronic and progressive, leading to deformities and disability." Id. Blamire's treatment has included several forms of medication.

With respect to Blamire's ability to perform work-related activities, the record includes: (1) an assessment of Blamire's physical residual functional capacity[1] completed by a Social Security single decision maker[2] in December of 2011; (2) a "Medical Source Statement of Ability to do Work-Related Activities (Physical)" completed by Dr. Andree Phillips, Blamire's treating rheumatologist, in January of 2012; and (3) a second medical source statement completed by Dr. Phillips in October of 2012.

In her second statement, Dr. Phillips opined that Blamire: (1) could never lift or carry more than 20 pounds, but could occasionally lift or carry up to 20 pounds and could frequently

---

[1] "Residual functional capacity," or "RFC," is a term of art that means "the most [a claimant] can still do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1).

[2] "Single decision makers are authorized under 20 C.F.R. § 404.906(a) as a 'testing modification' in several states, including New Hampshire, for streamlining the disability determination process." Martel v. U.S. Soc. Sec. Admin., Comm'r, No. 13-cv-48-PB, 2013 WL 6068241, at *13 n.12 (D.N.H. Nov. 18, 2013) (citation omitted); see also Sratton v. Astrue, 987 F. Supp. 2d 135, 138 n.2 (D.N.H. 2012) (describing the single-decision-maker model).

lift or carry up to 10 pounds; (2) could sit for one hour without interruption and for eight hours in an eight-hour work day; (3) could stand for one hour without interruption and for four hours in an eight-hour work day; (4) could walk for one hour without interruption and for two hours in an eight-hour work day; (5) did not need a cane to ambulate; (6) could occasionally use either hand for reaching, handling, fingering, feeling, and pushing/pulling; (7) could occasionally use either foot to operate foot controls; (8) could never climb stairs, ramps, ladders or scaffolds but could occasionally balance, stoop, kneel, crouch, and crawl.  With regard to environmental limitations, Dr. Phillips opined that Blamire (1) could not tolerate exposure to unprotected heights, humidity, wetness, or extreme heat or cold; (2) could tolerate occasional exposure to moving mechanical parts, operating a motor vehicle, and vibrations; and (3) could tolerate moderate (office) noise. Finally, Dr. Phillips opined that Blamire was able to: (1) perform activities like shopping; (2) travel without a companion for assistance; (3) ambulate without an assistive device; (4) walk a block at a reasonable pace on rough or uneven surfaces; (5) use standard public transportation; (6) climb a few steps at a reasonable pace with the use of a single hand rail; (7)

prepare a simple meal and feed herself; (8) care for her personal hygiene; and (9) sort, handle, or use paper/files.

After conducting a hearing, the ALJ issued a decision that includes the following relevant findings of fact and conclusions of law:

> 3. The claimant has the following severe impairment: psoriatic arthritis (20 CFR 404.1520(c)).
>
> . . . .
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> . . . .
>
> 5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) allowing her to lift and carry up to twenty pounds occasionally and ten pounds frequently; sit, stand, or walk for one-hour periods of time each but overall sit up to eight hours per day, stand up to four hours per day, and walk up to two hours per day; occasionally climb ramps or stairs, balance, stoop, kneel, crouch, and crawl but never climb ladders, ropes, or scaffold[s]; occasionally reach, handle, finger, feel, push, or pull; and she would need to avoid unprotected heights, exposure to concentrated levels of humidity or wetness and temperature extremes, but she could occasionally drive a car, work with dangerous machinery, and perform work with vibration.
>
> . . . .
>
> 6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

>    . . . .
>
>    10.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

Administrative Transcript (hereinafter "Tr.") 49, 50, 54.  Based upon his assessment of Blamire's residual functional capacity, and his reliance upon testimony from a vocational expert ("VE"), the ALJ determined that Blamire was able to perform the occupations of surveillance system monitor, companion, and hostess.

**Discussion**

A. The Legal Framework

To be eligible for disability insurance benefits, a person must: (1) be insured for such benefits; (2) not have reached retirement age; (3) have filed an application; and (4) be under a disability.  42 U.S.C. §§ 423(a)(1)(A)-(D).  The only question in this case is whether Blamire was under a disability.

For the purpose of determining eligibility for disability insurance benefits,

>    [t]he term "disability" means . . . inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or

7

>which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).  Moreover,

>[a]n individual shall be determined to be under a disability only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [she] lives, or whether a specific job vacancy exists for [her], or whether [she] would be hired if [she] applied for work.  For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A).

To decide whether a claimant is disabled for the purpose of determining eligibility for disability insurance benefits, an ALJ is required to employ a five-step process.  See 20 C.F.R. § 404.1520.

>The steps are: 1) if the [claimant] is engaged in substantial gainful work activity, the application is denied; 2) if the [claimant] does not have, or has not had within the relevant time period, a severe impairment or combination of impairments, the application is denied; 3) if the impairment meets the conditions for one of the "listed" impairments in the Social Security regulations, then the application is granted; 4) if the [claimant's] "residual functional capacity" is such that he or she can still perform past relevant work, then the application is denied; 5) if the [claimant], given his or her residual functional capacity, education, work experience, and

8

> age, is unable to do any other work, the application
> is granted.

Seavey v. Barnhart, 276 F.3d 1, 5 (1st Cir. 2001) (citing 20 C.F.R. § 416.920, which outlines the same five-step process as the one prescribed in 20 C.F.R. § 404.1520).

The claimant bears the burden of proving that she is disabled. See Bowen v. Yuckert, 482 U.S. 137, 146 (1987). She must do so by a preponderance of the evidence. See Mandziej v. Chater, 944 F. Supp. 121, 129 (D.N.H. 1996) (citing Paone v. Schweiker, 530 F. Supp. 808, 810-11) (D. Mass. 1982)). However,

> [o]nce the [claimant] has met his or her burden at
> Step 4 to show that he or she is unable to do past
> work due to the significant limitation, the
> Commissioner then has the burden at Step 5 of coming
> forward with evidence of specific jobs in the national
> economy that the [claimant] can still perform. Arocho
> v. Sec'y of Health & Human Servs., 670 F.2d 374, 375
> (1st Cir. 1982). If the [claimant's] limitations are
> exclusively exertional, then the Commissioner can meet
> her burden through the use of a chart contained in the
> Social Security regulations. 20 C.F.R. § 416.969;
> Medical-Vocational Guidelines, 20 C.F.R. pt. 404,
> subpt. P, App. 2, tables 1-3 (2001), cited in 20
> C.F.R. § 416.969; Heckler v. Campbell, 461 U.S. 458
> (1983). "The Grid," as it is known, consists of a
> matrix of the [claimant's] exertional capacity, age,
> education, and work experience. If the facts of the
> [claimant's] situation fit within the Grid's
> categories, the Grid "directs a conclusion as to
> whether the individual is or is not disabled." 20
> C.F.R. pt. 404, subpt. P, App. 2, § 200.00(a), cited
> in 20 C.F.R. § 416.969. However, if the claimant has
> nonexertional limitations (such as mental, sensory, or
> skin impairments, or environmental restrictions such
> as an inability to tolerate dust, id. § 200(e)) that
> restrict his [or her] ability to perform jobs he [or

> she] would otherwise be capable of performing, then the Grid is only a "framework to guide [the] decision," 20 C.F.R. § 416.969a(d) (2001). See also Pratts v. Chater, 94 F.3d 34, 39 (2d Cir. 1996) (discussing use of Grid when applicant has nonexertional limitations).

Seavey, 276 F.3d at 5 (parallel citations omitted). Finally,

> [i]n assessing a disability claim, the [Acting Commissioner] considers objective and subjective factors, including: (1) objective medical facts; (2) [claimant]'s subjective claims of pain and disability as supported by the testimony of the claimant or other witness; and (3) the [claimant]'s educational background, age, and work experience.

Mandziej, 944 F. Supp. at 129 (citing Avery v. Sec'y of HHS, 797 F.2d 19, 23 (1st Cir. 1986); Goodermote v. Sec'y of HHS, 690 F.2d 5, 6 (1st Cir. 1982)).

### B. Blamire's Arguments

According to Blamire, the ALJ's decision should be reversed, and the case remanded, because the ALJ: (1) erred at step three by determining that her psoriatic arthritis does not meet or medically equal the severity of a listed impairment; (2) formulated a residual functional capacity that was not supported by substantial evidence; (3) improperly assessed her credibility; (4) relied upon VE testimony that was based upon a hypothetical question that incorporated a flawed RFC; and (5) improperly relied upon the medical-vocational guidelines. The court is not persuaded by any of Blamire's arguments.

1. Step Three

Blamire first argues that the ALJ erroneously determined that her psoriatic arthritis did not meet the conditions for Listing 1.02, major dysfunction of a joint, because, in fact, "[t]he medical evidence and testimony clearly indicate chronic joint pain and stiffness resulting in an inability to ambulate effectively and an inability to perform fine and gross movements effectively." Cl.'s Br. (doc. no. 9-1) 5.

To meet the level of severity required for Listing 1.02, joint dysfunction must result in either an inability to ambulate effectively or an inability to effectively perform fine and gross movements with an upper extremity. But, a listing-level joint dysfunction must also be

> [c]haracterized by gross anatomical deformity (e.g., subluxation, contraction, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankyloses of the affected joint(s).

20 C.F.R. § 404, Subpt. P, App. 1, Listing 1.02 (emphasis added). Moreover, "[f]or a claimant to show that [her] impairment matches a listing, it must meet all of the specified medical criteria [which means that] [a]n impairment that manifests only some of those criteria, no matter how severely,

does not qualify." Sullivan v. Zebley, 493 U.S. 521, 530 (1990), superseded by statute on other grounds as stated in Colon v. Apfel, 133 F. Supp. 2d 330, 338-39 (S.D.N.Y. 2001) (emphasis in the original).

In determining that Blamire's psoriatic arthritis did not meet Listing 1.02, the ALJ pointed out that she did "not display gross anatomical deformity." Tr. 50. In the only office note that addresses the issue of deformity, Dr. Phillips reported that "[m]usculoskeletal exam of the hand reveals no significant deformity in the DIP or PIP joints or MCPs." Tr. 317. Moreover, while several of Dr. Phillips's office notes mention range of motion, none reports any limitation. See Tr. 251, 256, 293, 303, 313, 315, 317, 320. Because the record includes no evidence of gross anatomical deformity and considerable evidence of normal, unlimited joint motion, the ALJ committed no error at step three by determining that Blamire's condition does not meet the level of severity necessary required by Listing 1.02. See Zebley, 493 U.S. at 530.

### 2. RFC

Blamire next claims that the ALJ's assessment of her RFC is not supported by substantial evidence because "[t]here is no medical evidence to substantiate the findings that the Claimant

can overall sit up to eight hours per day [and] stand up to four hours per day." Cl.'s Br. (doc. no. 9-1) 5.

In her medical source statement of October 2012, Blamire's treating rheumatologist opined that she could sit for eight hours in an eight-hour workday and stand for four hours in an eight-hour workday. To be sure, Dr. Phillips had opined, about ten months earlier, that Blamire could only sit for six hours in an eight-hour workday and stand for one hour in an eight-hour workday. See Tr. 297. But, as the court has noted, "the resolution of conflicts in the evidence is for the [Acting Commissioner], not the courts." Irlanda Ortiz, 955 F.2d at 769. Thus, the ALJ committed no error by basing Blamire's RFC on Dr. Phillips's more recent opinion.

Blamire also claims that the ALJ erred by determining that her RFC qualified her as capable of performing light work. Under the applicable regulations:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. § 404.1567(b). Blamire does not identify with any precision what aspects of light work she is not capable of performing, and Dr. Phillips's second medical source statement is substantial evidence in support of the ALJ's determination that Blamire is capable of meeting the exertional requirements of light work.

### 3. Credibility

Blamire also makes a cursory attempt to challenge the ALJ's assessment of the credibility of her testimony, arguing that: (1) the ALJ gave "an insufficient explanation discrediting the Claimant's testimony with regard to the limitations of her daily activities, the increased difficulty in bathing and dressing, as well as the need for guidance and assistance while showering," Cl.'s Br. (doc. no 9-1) 6; and (2) the ALJ "determined [that] her claims of severity were not supported by objective evidence," id. at 7, but made that determination by ignoring "the medical records of increased symptoms, increased tremors, and increased muscle spasms," id.

As a preliminary matter, the court is not convinced that Blamire's credibility arguments are sufficiently developed to merit the court's attention. See Kalantzis v. U.S. Soc. Sec. Admin., Comm'r, No. 13-cv-12-JL, 2014 WL 580143, at *3 (D.N.H.

Feb. 10, 2014) (citing Montero v. Colvin, No. 12-cv-412-JL, 2013 WL 4042424, at *1 n.1 (D.N.H. Aug. 8, 2013); Dawes v. Astrue, No. 1:11-cv-272-DBH, 2012 WL 1098449, at *7 (D. Me. Mar. 30, 2012)). But, in any event, neither argument is meritorious.

In declining to fully credit Blamire's testimony concerning her ability to perform daily activities, including bathing and dressing, the ALJ specifically referred to Blamire's report to Dr. Phillips that she was spending five days a week at home with her 11-year-old daughter while her husband was on the road working as a trucker. See Tr. 303. That explanation is sufficient. See Irlanda Ortiz, 955 F.2d at 769 ("the resolution of conflicts in the evidence is for the [Acting Commissioner], not the courts"). With regard to the ALJ's purported failure to consider "the medical records of increased symptoms," Cl.'s Br. (doc. no. 9-1) 7, the material that Blamire charges the ALJ with ignoring consists exclusively of subjective complaints that Blamire made to Dr. Phillips. But, Blamire's subjective complaints to Dr. Phillips are not medical evidence. See Ford v. Barnhart, No. 04-CV-194-PB, 2005 WL 1593476, at *8 (D.N.H. July 7, 2005). Thus, the ALJ's failure to mention those complaints in his decision does nothing to undermine his determination that Blamire's statements about her symptoms were not adequately supported by medical evidence.

### 4. VE Testimony

Blamire claims that this case should be remanded because the ALJ relied upon the VE's answer to a hypothetical that "excluded limitations described in the Claimant's testimony with regard to her ability to stand and walk for any length of time."[3] Cl.'s Br. (doc. no. 9-1) 6. That argument fails because Blamire offered no testimony about her ability to stand,[4] and while she testified that she sometimes walks "bent over," Tr. 85, she never testified that her condition limited the amount of time she was able to walk or the amount of walking she was able to do.

---

[3] Blamire continues: "When those limitations were inquired to the VE, she testified that the Claimant would be precluded from light work if those were requirements as well as the inability to deal with the issue of standing for any length of time." Cl.'s Br. (doc. no. 9-1) 6. Blamire does not provide a citation that directs the court to the testimony to which she refers, and the court has been unable to locate any such testimony. Blamire's counsel did ask the VE whether an inability to sit, stand, or walk for more than an hour at a time would preclude a person from performing the three jobs she had identified as appropriate for Blamire. The VE answered that question in the negative, indicating that all three jobs could be performed with a sit/stand option. See Tr. 96-97.

[4] The only mention of standing at the hearing was the ALJ's observation that Blamire had been standing throughout it. See Tr. 81.

### 5. Reliance upon the Medical-Vocational Guidelines

Finally, Blamire claims that the ALJ's "reliance upon the Medical-Vocational Guidelines was a further error." Cl.'s Br. (doc. no. 9-1) 6. That claim fails because the ALJ did not rely upon the medical-vocational guidelines. Rather, because the ALJ found that Blamire had nonexertional limitations, he eschewed the Medical-Vocational Guidelines and relied upon the testimony of a VE.

### Conclusion

Because the ALJ committed neither a legal nor a factual error in evaluating Blamire's claim and determining that she was not disabled, see Manso-Pizarro, 76 F.3d at 16, her motion for an order reversing the Acting Commissioner's decision, document no. 9, is denied, and the Acting Commissioner's motion for an order affirming her decision, document no. 11, is granted. The clerk of the court shall enter judgment in accordance with this order and close the case.

SO ORDERED.

_____
Landya McCafferty
United States District Judge

May 26, 2015
cc:   John A. Wolkowski, Esq.
      T. David Plourde, Esq.